## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LISA SALAS, as parent and next
friend of ORLANDO SALAS,

      Plaintiff,

vs.                                      No. CIV 08-1184 JB/RLP

MATTHEW BRIGHAM, MARISA BEE,
TERRI RHUE, EMANUEL RODRIGUEZ,
and LUCY DeLUNA, each in their individual
capacity, and the BOARD OF COUNTY
COMMISSIONERS OF CURRY COUNTY,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Default Judgment

or, in the Alternative, Other Sanctions for Discovery Violations and Memorandum in Support, filed

May 5, 2010 (Doc. 101)("Plaintiff's First Motion for Sanctions"); (ii) Defendant Marisa Bee's

Motion for Leave to File a Sur-Response, filed June 22, 2010 (Doc. 122)(Sur-Response Motion");

and (iii) Plaintiff's Motion for Sanctions Against Defendants for Unfair Discovery Tactics, filed July

20, 2010 (Doc. 133)("Plaintiff's Second Motion for Sanctions").  The Court held a hearing on

September 17, 2010.  The primary issues are: (i) whether the Court should allow Defendant Marisa

Bee to file a sur-response; and (ii) whether the Court should grant the requests that Plaintiff Lisa

Salas ("L. Salas") made for various sanctions against the Defendants under rule 37 of the Federal

Rules of Civil Procedure.  At the hearing, Bee's counsel, Ms. Mary Torres, stated that she no longer

felt a sur-response was necessary.  The Court will thus deny Bee's request for leave to file a sur-

response without prejudice to her renewing the motion if necessary.  The Court will deny in part and

grant in part L. Salas' motions for sanctions, because the circumstances warrant the Court granting some, but not all, of her requested sanctions.

## FACTUAL BACKGROUND

In September 2005, Orlando Salas ("O. Salas") was booked as a pre-trial detainee into the Curry County Juvenile Detention Facility ("CCJDF").  <u>See</u> Amended Complaint for Civil Rights Violations, State Torts, and Damages ¶ 9, at 3, filed August 6, 2009 (Doc. 41)("Amended Complaint"); Defendants Matthew Brigham, Terri Rhue, Emanuel Rodriguez, Lucy DeLuna and the Board of County Commissioners of Curry County's Answer to Plaintiff's Amended Complaint for Civil Rights Violations, State Torts, and Damages ¶ 9, at 2, filed August 18, 2009 (Doc. 44); Defendant Marisa Bee's Answer to Plaintiff's Amended Complaint for Civil Rights Violations, State Torts, and Damages ¶ 6, at 2, filed August 21, 2009 (Doc. 47).  O. Salas allegedly remained at CCJDF until May 16, 2006.  <u>See</u> Amended Complaint ¶ 10, at 3.  While O. Salas was incarcerated, the individual Defendants and other employees allegedly denied him sufficient amounts of food, denied him access to any mental health treatment, and kept him in isolation.  <u>See</u> Amended Complaint ¶¶11-13, at 3.  Bee, and Defendants Matthew Brigham, Terri Rhue, and Emanuel Rodriguez allegedly tortured and abused O. Salas while he was incarcerated by placing him in a restraint chair.  <u>See</u> Amended Complaint at ¶ 14, at 3.  As a result of these actions, O. Salas allegedly suffered physical injuries, pain and suffering, and severe psychological and emotional distress.  <u>See</u> Amended Complaint ¶ 19, at 4.

## PROCEDURAL BACKGROUND

On December 23, 2008, O. Salas filed a Complaint for Civil Rights Violations, State Torts, and Damages.  <u>See</u> Complaint for Civil Rights Violations, State Torts, and Damages, filed December 23, 2008 (Doc. 1).  Brigham, Rhue, Rodriguez, and Defendant Lucy DeLuna and the

Board of County Commissioners of Curry County ("BCC"), filed a joint answer to the Complaint on February 27, 2009.  See Defendants Matthew Brigham, Terri Rhue, Emanuel Rodriguez, Lucy DeLuna and the Board of County Commissioners of Curry County's Answer to Plaintiff's Complaint for Civil Rights Violations, State Torts, and Damages, filed February 24, 2009 (Doc. 7). Daniel Macke represents these Defendants.  Bee filed an answer to the Complaint on March 3, 2009. See Defendant Marisa Bee's Answer to Plaintiff's Complaint for Civil Rights Violations, State Torts, and Damages, filed March 3, 2009 (Doc. 9).  Ms. Torres represents Bee.  On June 8, 2009, O. Salas filed a motion, seeking to amend his Complaint to add his mother, L. Salas, as a nominal plaintiff in her capacity as parent and next friend, on the grounds that the Second Judicial District Court entered an order on February 5, 2009, finding O. Salas to be incompetent.  See Plaintiff's Motion for Leave to File Amended Complaint, filed June 8, 2009 (Doc. 24).  On July 30, 2009, the Court granted O. Salas' motion for leave to amend the Complaint.  See Order, filed July 30, 2009 (Doc. 37).  On August 6, 2009, L. Salas filed an Amended Complaint, listing herself as parent and next friend of O. Salas.  See Amended Complaint.

### 1.    Procedural Background Relating to the Discovery Efforts.

L. Salas served Bee with written interrogatories and requests for production on September 30, 2009.  See Certification of Service, filed September 30, 2009 (Doc. 50).  Bee served her answers to the interrogatories on November 16, 2009.  See Certificate of Service, filed November 16, 2009 (Doc. 67).  Before Bee's deposition on March 23, 2010, Ms. Torres informed L. Salas' counsel, Mr. Matthew Coyte, that some of Bee's answers to interrogatories were incorrect and needed to be changed.  See Plaintiff's First Motion for Sanctions at 3; Response in Opposition to Plaintiff's Motion for Default Judgment or in the Alternative, Other Sanctions for Discovery Violations at 2, filed May 25, 2010 (Doc. 112)("Bee's Response to Plaintiff's First Motion for Sanctions").  The

requested changes were in regard to Bee's criminal history and involvement in previous civil lawsuits.  See Plaintiff's First Motion for Sanctions at 2-3.  Following Bee's deposition, Mr. Coyte discovered that parts of Bee's depositional testimony, specifically her testimony regarding her criminal history, her use of illegal drugs or narcotics, and her resignation from her employment at the CCJDF, were allegedly false.  See Plaintiff's First Motion for Sanctions at 3-4.

L. Salas served BCC with written interrogatories and requests for production on September 30, 2009.  See Certificate of Service, filed September 30, 2009 (Doc. 51).  One of the interrogatories requested documents associated with any investigation or audit of CCJDF performed by any state or federal agency involving the health and safety of the detainees.  See Plaintiff's First Motion for Sanctions at 5.  During a deposition of one of the facility's guards, it became apparent BCC had not provided several audit reports.  See Plaintiff's First Motion for Sanctions at 5; Defendants the Board of County Commissioners' Response to Plaintiff's Motion for Default Judgement or, in the Alternative, Other Sanctions for Discovery Violations and Memorandum in Support at 2, filed May 18, 2010 (Doc. 109)("BCC's Response to Plaintiff's First Motion for Sanctions").  Following the deposition, BCC issued its Fourteenth Supplemental Initial Disclosure, which included reports from annual inspections of the facility by the New Mexico Children Youth and Families Department ("CYFD") from 2006-2009.  See Plaintiff's First Motion for Sanctions at 5-6.  BCC provided the audit report from the 2005 inspection approximately a week later.  See Plaintiff's First Motion for Sanctions at 5.

Following these events, L. Salas moved the Court to impose sanctions against Bee and BCC for discovery violations pursuant to rule 37(b) and (c).  See Plaintiff's First Motion for Sanctions at 1.  In her motion, L. Salas asked the Court to enter default judgment on liability against Bee, and mentioned the possible sanctions of striking Bee's defenses and pleadings.  See Plaintiff's First

-4-

Motion for Sanctions at 6.  L. Salas asked the Court to issue an instruction pursuant to rule 37(c) informing the jury that it could draw an adverse inference from BCC's failure to make timely disclosure of the audit reports.  See Plaintiff's First Motion for Sanctions at 12.  L. Salas also asked the Court to require BCC to bear all costs and attorneys fees associated with investigating the late disclosure and its implications, including re-deposing witnesses, and the attorneys fees associated with the preparation of her motion.  See Plaintiff's First Motion for Sanctions at 11-12.

After the briefing on L. Salas' motion for sanctions was complete, Bee filed a motion requesting leave of the Court to file a sur-response.  See Sur-Response Motion at 1.  Bee contended that L. Salas raised new material for the first time in her reply to Bee's response to the motion for sanctions, and that Bee needed an opportunity to respond to the new issues.  See Sur-Response Motion at 1.

On June 25, 2010, BCC produced hundreds of pages of discovery as part of its responses to Plaintiff's Third Set of Interrogatories and Requests for Production and as part of DeLuna's responses to Plaintiff's Second Set of Interrogatories and Requests for Production.  See Plaintiff's Second Motion for Sanctions.  The materials that BCC produced included a report, dated February 26, 2006 ("2006 Incident Report"), that discussed an incident where another juvenile detainee urinated on O. Salas from the crawl space above his cell.  See Plaintiff's Second Motion for Sanctions at 2.  L. Salas alleged that the incident report should have been produced as part of BCC's answers to her First Set of Interrogatories and Requests for Production.  See Plaintiff's Second Motion for Sanctions at 2.  L. Salas also alleged that BCC had not provided incident reports for the latter half of 2005 -- the time that O. Salas entered the facility.  See Plaintiff's Second Motion for Sanctions at 4.  BCC provided recordings of O. Salas' telephone calls in its Twentieth Supplemental Disclosure.  See Plaintiff's Second Motion for Sanctions at 3.  L. Salas alleged that this production

-5-

was untimely, as BCC had previously alleged that all responsive recordings had been produced.  <u>See</u> Plaintiff's Second Motion for Sanctions at 4.

L. Salas moved the Court to impose sanctions against the Defendants for their unfair discovery tactics pursuant to rule 37.  <u>See</u> Plaintiff's Second Motion for Sanctions at 1.  L. Salas asked the Court to impose default judgment on all the Defendants.  <u>See</u> Plaintiff's Second Motion for Sanctions at 10.  L. Salas asked the Court to exclude the Defendants from using any discovery BCC untimely produced, including documents and recordings of telephone calls, at trial.  <u>See</u> Plaintiff's Second Motion for Sanctions at 7.  L. Salas also asked the Court to appoint an independent expert pursuant to rule 706 of the Federal Rules of Evidence, at BCC's expense, to conduct an audit of BCC's business records and record-keeping practices.  <u>See</u> Plaintiff's Second Motion for Sanctions at 8.  L. Salas contended that she should be permitted to depose BCC's county manager, Lance Pyle, who was identified as the individual who responded to discovery on the behalf of the board at BCC's expense.  <u>See</u> Plaintiff's Second Motion for Sanctions at 9.  L. Salas also asserts that she should be allowed to conduct additional discovery based on the untimely disclosures. <u>See</u> Plaintiff's Second Motion for Sanctions at 9.

On September 9, 2010, L. Salas filed a Second Amended Complaint for Civil Rights Violations, State Torts, and Damages, which included an allegation that employees at CCJDF allowed a juvenile detainee access to a crawl space above O. Salas' cell, where the juvenile urinated on O. Salas.  <u>See</u>  Second Amended Complaint for Civil Rights Violations, State Torts, and Damages ¶ 15, at 4, filed September 9, 2010 (Doc. 220).

### <u>RELEVANT LAW REGARDING RULE 26</u>

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to make initial disclosures to the other parties, relaying:

(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii) a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

(iii) a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1). Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner if it learns that the disclosure or response is incomplete or incorrect.  See Fed. R. Civ. P. 26(e).

## RELEVANT LAW REGARDING RULE 37

Rule 37(b) states that, if a party fails to obey "an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), the court where the action is pending may issue further just orders," including:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make."  Ehrenhaus v. Reynolds, 965 F.2d 916 (10th Cir. 1992).  Although the court has discretion to choose an appropriate sanction, the sanction must be just.  See The Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)(citation omitted).  A default judgment is a harsh sanction that a court should impose only when the party's failure to comply with discovery demands is the result of willfulness, bad faith, or other fault of the party rather than inability to comply.  See Fed. Deposit Ins. Co. v. Daily, 973 F.2d 1525, 1530 (10th Cir. 1992); Applied Capital, Inc. v. Gibson, No. 05-CIV-0098 JB/ACT, 2007 WL 750341, at *2 (D.N.M. Jan. 30, 2007)(Browning, J.).  A willful failure means intentional failure rather than involuntary noncompliance.  See Fed. Deposit Ins. Co. v. Daily, 973 F.2d at 1530.

Rule 37(c) states: "If a party fails to provide information or identify a witness as required by rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In addition to, or instead of this sanction, a court may order payment of the reasonable expenses caused by the failure, inform the jury of the party's failure, or impose other appropriate sanctions, including any orders listed in rule 37(b)(2)(A)(i)-(v).  See Fed. R. Civ. P. 37(c)(1)(A)-(C).

## ANALYSIS

The Court will deny Bee's request for leave to file a sur-response without prejudice to Bee renewing the motion, because at the hearing on September 17, 2010, Ms. Torres stated that a sur-response was no longer necessary.  As the circumstances warrant, the Court will deny in part and grant in part L. Salas' motions for sanctions.[1]

## I.    THE COURT WILL DENY BEE'S REQUEST FOR LEAVE TO FILE A SUR-RESPONSE WITHOUT PREJUDICE TO HER RENEWING THE MOTION IF NECESSARY.

In Bee's Motion for Leave to File a Sur-response, she contends that L. Salas raised new material for the first time in her reply to the defendants' responses to her motion for sanctions.  See Sur-Response Motion at 1.   Bee contends that L. Salas cited DeLuna's deposition testimony and Carol Holland's[2] deposition testimony for the first time in her reply brief.  See Sur-Response Motion at 2.  L. Salas contends that she did not present new arguments.  See Plaintiff's Response to Marisa Bee's Motion for Leave to File a Sur-response at 1, filed July 6, 2010 (Doc. 128)("Response to Sur-Response Motion").  L. Salas argues that her references did not advance new arguments, but referred only to arguments that she previously set forth.  See Response to Sur-Response Motion at 1-2.  Bee argues that due process requires that she have the opportunity to respond fully to the new evidence

---

[1] The Defendants contend that the Court should summarily deny L. Salas' Second Motion for Sanctions, as she did not seek the Defendants' concurrence in her sanctions motion as rule 7.1 of the Local Rules of Civil Procedure for the District of New Mexico requires.  See Defendants' Response to Plaintiff's Motion for Sanctions Against Defendants for Unfair Discovery Tactics at 13, filed August 5, 2010 (Doc. 161)("Defendants' Response to Plaintiff's Second Motion for Sanctions").  Although L. Salas did not seek concurrence on her Second Motion for Sanctions, the Defendants filed a response in opposition of the motion and appeared at the hearing on September 17, 2010 to argue against the motion.  The Court therefore is aware that the Defendants oppose the motion and will address the merits of the motion instead of summarily dismissing it on procedural grounds.

[2] Carol Holland is a nurse at CCJDF.

offered against her.  See Reply in Support of Sur-Response Motion at 2.

At the hearing on September 17, 2010, Ms. Torres stated that she felt a sur-response was no longer necessary as the parties had discussed the issues she planned to raise in the sur-response at the hearing.  The Court will thus deny Bee's motion for leave to file a sur-response without prejudice to her renewing the motion if necessary.

## II.   THE COURT WILL DENY L. SALAS' REQUEST THAT IT ENTER DEFAULT JUDGMENT AGAINST THE DEFENDANTS.

L. Salas contends that the Court should enter default judgment against the Defendants. See Plaintiff's First Motion for Sanctions at 9; Plaintiff's Second Motion for Sanctions at 10. L. Salas contends that the Court should grant default judgment against Bee because Bee tried to hide evidence that she had been convicted of crimes of dishonesty, failed to disclose a civil case in which she was a party, was not truthful about her drug use in her deposition, and feigned ignorance about a juvenile detainee urinating on O. Salas even though she wrote the incident report.  See Plaintiff's First Motion for Sanctions at 9; Plaintiff's Second Motion for Sanctions at 5.  L. Salas contends that these instances of "blatant perjury" suggest that the Court should enter default judgment against Bee. Plaintiff's Second Motion for Sanctions at 5.  Bee contends that the circumstances do not warrant default judgment.  See Bee's Response to Plaintiff's First Motion for Sanctions at 2-3.  Bee argues that L. Salas does not establish that she was prejudiced, and that "the discrepancies complained of do not go to the merits of the claims or defenses."  Bee's Response to Plaintiff's First Motion for Sanctions at 2-3.  Bee also contends that she did not deny that the urination incident actually happened; rather, she stated that she did not recall the incident.  See Defendants' Response to Plaintiff's Second Motion for Sanctions at 17.

L. Salas alleges that the Court should enter default judgment against Brigham, Rhue,

-10-

Rodriguez, DeLuna, and BCC, because BCC's production of the incident report regarding a juvenile urinating on O. Salas and the second batch of telephone calls was untimely.  <u>See</u> Plaintiff's Second Motion for Sanctions at 2-4.  L. Salas contends that, "[i]n light of Defendants' common defense together with the unfair prejudice Plaintiff has suffered as a result of Defendants' discovery tactics, the Court should enter default judgment against the County Defendants."  Plaintiff's Second Motion for Sanctions at 10.  Brigham, DeLuna, Rhue, Rodriguez, and BCC contend that L. Salas is not entitled to default judgment, as they did not "knowingly with[hold] documents or delay[] production for malicious reasons," and because L. Salas has not "been significantly prejudiced."  Defendants' Response to Plaintiff's Second Motion for Sanctions at 12.

The Court does not believe that the circumstances warrant the serious sanction of default judgment against any of the Defendants.  <u>See</u> <u>Fed. Deposit Ins. Co. v. Daily</u>, 973 F.2d 1525, 1530 (10th Cir. 1992)(stating that a court should impose the harsh sanction of default judgment only when a party's failure to comply with discovery demands is the result of willfullness, bad faith, or other fault of the party, rather than inability to comply).  The Court is not prepared to say, on the record before it, that Bee committed perjury; witnesses often forget incidents and details.  While the Court has concerns about a witness forgetting an incident as dramatic and impressive as the urination incident, the Court believes it is best to let Bee tell the jury she forgot about the incident, and let the jury determine whether she is credible.  The Court is not convinced that the Defendants' late production of the materials is the result of willfulness or bad faith, but rather was caused by failure to know about the telephone recordings and placement of the 2006 Incident Report in a file unrelated to O. Salas.  For this reason, and for reasons stated at the hearing on the record, the Court denies L. Salas' request that it grant default judgment against Bee, Brigham, Rhue, Rodriguez, DeLuna, and BCC.

## III.   THE COURT WILL DENY L. SALAS' REQUEST THAT IT STRIKE BEE'S QUALIFIED IMMUNITY DEFENSE AND HER PLEADINGS.

L. Salas asks the Court to strike Bee's qualified immunity defense, summary judgment pleading, and motions in limine.  <u>See</u> Plaintiff's First Motion for Sanctions at 6.  Bee has moved for summary judgment on the basis that she is entitled to qualified immunity, and that L. Salas failed to identify any disputed issues of material fact which require trial on the federal or state claims she asserted on behalf of O. Salas against Bee.  <u>See</u> Defendant Marisa Bee's Motion and Memorandum Brief in Support of her Motion for Summary Judgment on the Basis of Qualified Immunity and on Other Grounds, filed July 30, 2010 (Doc. 153).  Bee has also filed three motions in limine: (i) Defendant Marisa Bee's Motion in Limine No. 1 Regarding Use of Illegal Drugs Three Years After Plaintiff Left the Curry County Juvenile Detention Center, filed July 23, 2010 (Doc. 139); (ii) Defendant Marisa Bee's Motion in Limine No. 2 Regarding her Arrests and Criminal Charges Occurring After Orlando Salas Left the Curry County Juvenile Detention Center, filed July 23, 2010 (Doc. 140); and (iii) Defendant Marisa Bee's Motion in Limine No. 3 Regarding Any Evidence Relating to Curry County Juvenile Detention Center's Reasons for Proposing her Termination, filed July 23, 2010 (Doc. 141).  At the hearing, Ms. Torres contended that Bee's answers to discovery do not warrant striking her qualified immunity defense or pleadings.  The Court agrees that the circumstances do not merit striking Bee's qualified immunity defense, summary judgment motion, or motions in limine.  The Court prefers to address these issues on the merits.  The Court will allow L. Salas to address Bee's answers to discovery on cross-examination, to the extent allowed by the Federal Rules of Evidence.  For these reasons, and the reasons stated in the hearing on the record, the Court denies L. Salas' request that the Court strike Bee's qualified immunity defense, summary judgment motion, and motions in limine.

**IV.    THE COURT WILL DENY L. SALAS' REQUEST THAT IT INSTRUCT THE JURY THAT IT MAY DRAW NEGATIVE INFERENCES FROM BBC'S FAILURE TO TIMELY DISCLOSE DISCOVERABLE MATERIALS.**

L. Salas asks the Court to instruct the jury that it may draw a negative inference from BCC's failure to timely disclose the audit reports from 2005-2008.  See Plaintiff's First Motion for Sanctions at 12.  BCC responds that the Court should not grant the requested sanctions, because BCC's untimely provision of the materials was not done in bad faith, and because any prejudice that its untimely disclosure caused can be cured through additional discovery.  See BCC's Response to Plaintiff's First Motion for Sanctions at 4, 8, 9.  At the hearing on September 17, 2010, L. Salas also asked the Court to instruct the jury that it could draw a negative inference from BCC's failure to produce incident reports from the later part of 2005.

The Court finds that the circumstances do not warrant this sanction.  See Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 863 (10th Cir. 2005)(stating that although it is within the court's discretion to impose sanctions for spoliation of evidence, if the aggrieved party seeks an adverse inference to remedy the spoliation, it must prove bad faith; "[m]ere negligence in losing or destroying records is not enough" (citing Aramburu v. The Boeing Co., 112 F.3d 1398, 1407 (10th Cir. 1997))).  The Court is not convinced, on the record before it, that the missing reports have been destroyed or that they existed; moreover, the Court does not see evidence of bad faith.  At the hearing on September 17, 2010, the Court told BCC to place documentation in the record -- such as an affidavit -- that states it is unable to find the missing incident reports from the later part of 2005.  The Court believes that L. Salas will be able to draw the jury's attention to these issues through cross-examination of the defendants and witnesses.  For these reasons, and the reasons stated at the hearing on the record, the Court denies L. Salas' request that it instruct the jury that the jury may draw adverse inferences from BCC's failure to produce incident reports from the later part

of 2005 and from BCC's untimely production of the audit reports.

## V.   THE COURT WILL DENY L. SALAS' REQUEST THAT IT APPOINT A RULE 706 EXPERT TO AUDIT BCC'S RECORDS.

L. Salas asks the Court to appoint an independent expert, pursuant to rule 706 of the Federal Rules of Evidence, at BCC's expense, to conduct an audit of BCC's business records and record-keeping practices to determine whether there are documents that should be produced and whether other documents were previously destroyed.  See Plaintiff's Second Motion for Sanctions at 8.  BCC contends that the Court should deny this request, because its production of the materials was delayed only because it was unaware that the materials existed.  See Defendants' Response to Plaintiff's Second Motion for Sanctions at 14.  BCC contends that it is "not obligated to produce documents [it] cannot possess or cannot locate after reasonable searches."  Defendants' Response to Plaintiff's Second Motion for Sanctions at 16.  The Court does not believe that the circumstances require it to appoint an independent expert pursuant to rule 706.  The Court believes that it can adequately address the parties' discovery disputes at this time.  For these reasons, and for reasons stated at the hearing on the record, the Court will deny L. Salas' request that it appoint an independent expert under rule 706.

## VI.   THE COURT WILL DENY L. SALAS' REQUEST THAT IT PREVENT THE DEFENDANTS FROM USING DISCOVERY THAT BCC UNTIMELY PRODUCED AT TRIAL.

L. Salas contends that BCC should have produced materials such as the 2006 Incident Report and the second batch of telephone calls as part of its rule 26 initial disclosures, making these materials untimely produced, and the Court should prevent the "Defendants from using at trial any discovery Defendant Board has untimely produced."  Plaintiff's Second Motion for Sanctions at 6-8. BCC contends that it was previously unaware of the second batch of telephone recordings and that

the production of these recordings did not prejudice L. Salas.  <u>See</u> Defendants' Response to
Plaintiff's Second Motion for Sanctions at 14, 19.  BCC contends that the 2006 Incident Report was
not divulged earlier because it was not in the detention center's files relating to O. Salas.
<u>See</u> Defendants' Response to Plaintiff's Second Motion for Sanctions at 7.  BCC contends that the
2006 Incident Report was not in the files relating to O. Salas, as it was a report dealing with the
discipline of five other juveniles for their conduct in relation to O. Salas.  <u>See</u> Defendants' Response
to Plaintiff's Second Motion for Sanctions at 7.  BCC contends that the delayed production of the
2006 Incident Report did not prejudice L. Salas, as the Amended Complaint never alleged the
urination incident as a basis for recovery.  <u>See</u> Defendants' Response to Plaintiff's Second Motion
for Sanctions at 19. At the hearing on September 17, 2010, L. Salas asked the Court prevent the
Defendants from using the second batch of telephone calls.  The Court does not believe that the
circumstances warrant it granting L. Salas' request that it prevent the Defendants from using the
second batch of telephone calls at trial.  Although BCC did not produce O. Salas' call to his father,
made after he escaped from the restraint chair, no one disputes that O. Salas made this call.  The
Court does not believe that it can resolve the problems that L. Salas faces because of the missing
recording through sanctions.  For these reasons, and the  reasons stated at the hearing on the record,
the Court will deny L. Salas' request that it exclude the Defendants from using the discovery that
BCC untimely produced at trial.

## VII.   THE COURT WILL GRANT L. SALAS' REQUEST TO DEPOSE LANCE PYLE AT BCC'S EXPENSE.

L. Salas asks the Court to allow her to depose BCC's county manager, Pyle, who was
identified as the individual who responded to discovery on the Board's behalf, at BCC's expense.
<u>See</u> Plaintiff's Second Motion for Sanctions at 9.  At the hearing on September 17, 2010, Mr.

Mackey stated that he was unsure why L. Salas needed to depose Pyle, as he is not a fact witness and can speak only to BCC's efforts to comply with discovery. The Court believes that L. Salas should be allowed to depose Pyle so that she can obtain information about the efforts he made to locate documents and the reasons behind BCC's untimely disclosures. For this reason, and other reasons stated at the hearing on the record, the Court will grant L. Salas' request to depose Pyle at BCC's expense.

## VIII.  THE COURT WILL GRANT L. SALAS' REQUEST THAT THE COURT ORDER BCC TO LOCATE JARED ROMERO AND DENY HER REQUEST TO DEPOSE ROMERO AT BCC'S EXPENSE.

In her second motion for sanctions, L. Salas asked the Court to allow her to conduct additional discovery based on BBC's untimely disclosures. See Plaintiff's Second Motion for Sanctions at 9. At the hearing on September 17, 2010, she asked the Court to order BCC to locate Jared Romero, a former detention officer at CCJDF, at its expense. She also asked the Court to grant her request to depose Romero at BCC's expense. BCC alleged that L. Salas was not prejudiced by the delayed production of the 2006 Incident Report, as the Amended Complaint did not allege the urination incident as a basis for recovery. See Defendants' Response to Plaintiff's Second Motion for Sanctions at 19. BCC alleged that, although it did not object to L. Salas seeking reasonable, additional discovery or Romero, it did not concede that the urination issue was properly raised in the Amended Complaint. See Defendants' Response to Plaintiff's Second Motion for Sanctions at 20. At the hearing on September 17, 2010, Mr. Mackey stated that BCC would be willing to hire an investigator to find Romero. Because BCC agrees to reasonable additional discovery, the Court orders BCC to hire an investigator who will attempt to locate Romero, and if he is located, L. Salas may depose him, but not at the BCC's expense. For these reasons, and the reasons stated at the hearing on the record, the Court will grant in part and deny in part L. Salas'

request.

## IX.   THE COURT WILL DENY L. SALAS' REQUEST TO DEPOSE ULYSSESS GONZALES AT BCC'S EXPENSE.

In her second motion for sanctions, L. Salas requested the Court to allow her to conduct additional discovery based on the untimely disclosures. See Plaintiff's Second Motion for Sanctions at 9.  At the hearing on September 17, 2010, L. Salas asked the court to allow her to depose Ulysses Gonzales, identified in the February 2006 report as the juvenile who urinated on O. Salas at BCC's expense.  BCC alleges that L. Salas did not suffer any prejudice as a result of the late production of the 2006 incident report, as the urination incident was not mentioned in the Amended Complaint as a basis for recovery, but states that it would have no objection to L. Salas seeking reasonable, additional discovery of Gonzales without conceding its argument that the urination incident was not raised in the Amended Complaint.  See Defendants' Response to Plaintiff's Second Motion for Sanctions at 20.   As BCC agrees to reasonable, additional discovery of Gonzales, the Court will allow L. Salas to depose Gonzales.  The Court does not, however, believe that there is a reason to shift the cost of Gonzales' deposition to BCC.  For this reason, and the reasons stated at the hearing on the record, the Court will deny L. Salas' request to depose Gonzales at BCC's expense.

## X.   THE COURT WILL GRANT L. SALAS' REQUEST TO RE-DEPOSE MATERIAL WITNESSES AT BCC'S EXPENSE.

L. Salas contends that, because of BCC's delayed production of the audit reports, she needs to re-depose witnesses in Clovis to ascertain their knowledge of the annual state audits and, in particular, the source of the incorrect information provided to CYFD.  See First Motion at 11.  BCC contends that its failure to identify the audit reports was not in bad faith, and that additional discovery can cure any prejudice that its delayed production caused.  See BCC's Response to Plaintiff's First Motion for Sanctions at 8-9.  At the hearing on September 17, 2010, L. Salas asked

the Court to grant her request to re-depose several witnesses so that she could question them about matters that have come to her attention since their depositions. The Court holds that L. Salas may re-depose material witnesses at BCC's expense as she did not have the audit reports during several depositions and thus could not question the witnesses about the reports.[3] For this reason, and the reasons stated at the hearing on the record, the Court grants L. Salas' request that it allow her to re-depose material witnesses at BCC's expense.

## XI.    THE COURT WILL GRANT L. SALAS' REQUEST THAT IT ORDER BCC TO PAY THE COST OF HER EXPERT AMENDING THE EXPERT REPORT AFTER BCC'S PROVISION OF THE AUDIT REPORTS.

L. Salas alleges that BCC should pay her expert's costs in amending the expert report after BCC provided the audit reports. See First at 11. BCC contends that the expert could have requested the reports, as they are public records, before completing the report, and that the audit reports were not withheld in bad faith. See BCC's Response to Plaintiff's First Motion for Sanctions at 8. The Court believes that BCC should not pay the entire cost of the amended expert report. The Court believes that the expert would have addressed the audit reports had BCC produced them earlier, and L. Salas would have borne that cost. L. Salas should still bear that cost. The Court finds that BCC should pay the cost that the expert has charged, if any, only for rewriting any portion of the original expert report because he or she did not have the audit reports earlier. The Court believes that this reimbursement of cost may be minimal, but if L. Salas wants BCC to pay the cost, she should serve and, if no agreement is reached, file an affidavit from the expert that sets forth the cost of amending

_____

[3] The Court grants L. Salas' request to re-depose material witnesses at the Defendants' expense because BBC produced the audit reports after she had conducted several depositions. L. Salas was thus unable to question these witnesses about the audit reports. Although the Court bases its ruling on BBC's delayed production of the audit reports, the Court finds that L. Salas may ask the witnesses about the urination incident, even though the incident was not alleged as a basis for recovery in the Amended Complaint.

the report that L. Salas incurred because BCC did not produce the audit reports at an earlier time and because the belated production caused the expert to rewrite a portion of the expert report.

## XII.   THE COURT WILL DENY BOTH PARTIES' REQUESTS FOR THE COSTS AND FEES ASSOCIATED WITH THE BRIEFING.

The Court will not exercise its discretion to order either party to pay the costs and fees associated with briefing these motions.  The dispute had merit for both sides.  For this reason, the Court will deny both parties' requests for costs and fees associated with the briefing.

**IT IS ORDERED** that: (i) Defendant Marisa Bee's Motion for Leave to File a Sur-response (Doc. 122), is denied without prejudice to her renewing the motion if necessary; (ii) Plaintiff's Motion for Default Judgment or, in the Alternative, Other Sanctions for Discovery Violations and Memorandum in Support (Doc. 101), is denied in part and granted in part; and (iii) Plaintiff's Motion for Sanctions Against Defendants for Unfair Discovery Tactics (Doc. 133), is denied in part and granted in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Matthew Coyte
Coyte Law, P.C.
Albuquerque, New Mexico

-- and --

Adam S. Baker
Taos, New Mexico

*Attorneys for the Plaintiff*

Daniel J. Macke
Erika E. Anderson
Robles, Rael & Anaya, P.C.
Albuquerque, New Mexico

 *Attorneys for the Defendants Matthew Brigham, Terri Rhue, Emanuel Rodriguez, Lucy
 DeLuna, and Board of County Commissioners of Curry County*

Mary T. Torres
Beall & Biehler
Albuquerque, New Mexico

 *Attorney for Defendant Marisa Bee*